UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LISA ROMANO,

                      Plaintiff,

v.                                                  **DECISION AND ORDER**
                                                           10-CV-797S

CHAUTAUQUA OPPORTUNITIES, INC.,

                      Defendant.

## I. INTRODUCTION

Plaintiff Lisa Romano commenced this action in October 2010 alleging that her employer, Defendant Chautauqua Opportunities, Inc., discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*. Presently before the Court is Defendant's Motion for Summary Judgment dismissing the amended complaint.[1] For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Defendant's motion should be granted.

## II. BACKGROUND

Plaintiff worked for Defendant from May 1987 until her termination in November

---

[1] In support of its motion, Defendant submitted the Attorney Affirmation of Edward J. Wagner, Esq., with Exs. 1-12, the Affidavit of Roberta Keller, a Statement of Material Facts, and a supporting Memorandum of Law. (Docket No. 13.) Plaintiff responded with an opposing Memorandum of Law, Response to Defendant's Statement of Undisputed Facts, and the Attorney Affidavit of Lindy Korn, Esq., with Exs. A-D. (Docket No. 19.) Defendant filed the reply Attorney Affirmation of Edward J. Wagner, Esq., (Docket No. 20), and a Response to Plaintiff's Counterstatement of Undisputed Facts. (Docket No. 21.)

1

2008. (Am. Compl. ¶¶12, 23-24; Deposition of Plaintiff Lisa M. Romano, Ex 3 to Attorney Affirmation of Edward J. Wagner, at 64, 68, Docket No. 13.) She began as a nutrition clerk for Defendant's operation of the WIC program, and eventually received a "lateral promotion" to nutritional assistant. (Pl's Dep at 14-15, 34.) Plaintiff subsequently became a department scheduler, a position in which she "coordinated contact efforts between two different programs," the high risk prenatal "MOMs" program and the WIC program, "and any appointments and benefits and client contact within that department." (Pl's Dep at 35, 37-38, 41; Affidavit of Roberta Keller ¶ 2, Docket No. 13; see Deposition of Roberta Keller, Ex 4 to Wagner Affirm, at 59 (referring to Plaintiff's position as 'lead scheduler').)

Plaintiff alleges that she suffers from several disabilities within the meaning of the ADA, including rheumatoid arthritis, scoliosis, degenerative disc disease, and multiple sclerosis. (Am. Compl. ¶ 10.) In 1998, Plaintiff requested a four-day instead of a five-day work week on the advice of her doctors. (Pl's Dep at 41-47; Wagner Affirm Ex. 8, Docket No. 13-5 at 10-12.) That request was granted, and despite a slight reduction in her hours, Plaintiff remained a full-time employee for the remainder of her employment. (Pl's Dep at 47-48.) Plaintiff also obtained a handicap parking sticker in the mid to late 1990s because she had difficulty walking and with her balance. (Pl's Dep at 49-50.) Thereafter she started parking in handicap parking spaces at work. (Id. at 51; 59-60.) Plaintiff testified at her deposition that she was directed to park in a parking lot at the end of the building, where there were at least two designated handicap spots, and that this was adequate "[f]or a time." (Pl's Dep at 59-61.) She had a key at that time allowing her to access the building near her parking spot. (Id. at 61.)

At some point, her key to that door, as well as the keys of certain other employees,

2

was taken away. (Pl's Dep at 62-64.)  Although she could not recall what year this occurred, Plaintiff testified that "there were years in between" when the key privilege was revoked and when her employment was terminated. (Pl's Dep at 63-64.) Plaintiff continued to park in the same location, and would gain access by knocking on the door and being let in. (Id. at 65.) Sometime after 2004 it became more difficult to obtain entry to the building this way, as Plaintiff often had to wait longer for someone to open the door or would need to call the front desk for access. (Pl's Dep at 65-68.)  On "[s]everal [occasions] over the course of a few years," she had to walk to the front door. (Pl's Dep at 68.)  In November 2008, Cathy Bach,[2] a supervisor, commented upon opening the side door that Plaintiff "could walk around the front of the building," and that it "look[ed] like [Plaintiff] could use the exercise anyway." (Id. at 90, 93.)   Comments from other employees included "You have another doctor's appointment?" and "When are you going to get better?" (Id. at 94-96.)  Plaintiff believed that she would be reprimanded if she utilized the handicap parking spaces in the front of the building. (Id. at 70.)  She testified, however, that she did not complain to management after the key was taken away and accessing the building through the alternative entrance became difficult. (Id. at 74-76, 82.)

Plaintiff was terminated from her position in November 2008. (Am. Compl. ¶¶ 23-24; Wagner Affirm. Ex 6.)  A letter from Defendant informed her that "due to the restructuring of Health Services your position will be eliminated effective November 26, 2008." (Wagner Affirm. Ex 6.) The letter further stated that she would "be notified if the situation changes and your position becomes available and we also welcome an application from you for any

---

[2]The names 'Cathy Bach' and 'Kerry Mahalko' are also spelled 'Kathy Bach' and 'Carrie Mihalko' at various points in the record.

position you may qualify for." (Id.) As explained by Defendant's Executive Director Roberta Keller, Defendant operated two federally funded programs in 2008: WIC and MOMs. (Keller Aff. ¶ 2.) Defendant had previously blended the funding for those two programs, however, state regulators expressed dissatisfaction with that approach. (Id. ¶¶ 2-3.) Further, the MOMs program was to be taken over by the county. (Id. ¶ 3.) These changes prompted Defendant to consider restructuring, and a reduction in force committee was formed. (Id.)

Keller served on this committee with Defendant's Human Resources Director Teri Statler and the Director of Plaintiff's department, Kerry Mahalko. (Id. 5.) According to Keller, management reviewed the process and funding constraints and made recommendations regarding service flow to her. (Keller Dep at 42-46; Keller Aff. ¶ 5.) The recommendations were based "on position, not on the people." (Keller Dep at 43.) As a result of the recommendation, Keller decided to eliminate three positions, one of which was the scheduler position held by Plaintiff. (Keller Aff. ¶ 5.) The duties associated with these positions would be absorbed into other positions. (Keller Dep at 48; Keller Aff. ¶ 5.) Particularly, Plaintiff's duties were incorporated into the health support specialist positions. (Keller Dep at 50-51; Keller Aff ¶¶ 5-6.) Keller averred that these positions were not filled by new hires, but were created by expanding the job descriptions of persons already employed within the organization to include formerly fragmented duties. (Keller Aff ¶ 6.) "Health support specialists combined the clerical, scheduling duties that [P]laintiff had performed with other duties, including education functions and helping navigate clients to the services for which they qualified." (Id.; Keller Dep at 41-42.) The clerk-scheduler position was therefore no longer required. (Keller Aff ¶ 6; Keller Dep at 41-42.)

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") on January 6, 2009, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. ¶ 7.) The NYSDHR found no probable cause to support the allegations in the state charge, and the EEOC adopted the findings of the state agency and issued a right-to-sue notice on July 7, 2010. (Am. Compl. ¶¶ 8-9; Wagner Affirm. Ex 12.) Plaintiff commenced the instant action on October 5, 2010. (Compl., Docket No. 1.)

### III. DISCUSSION

Summary judgment is appropriate, even in a discrimination case, where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), *cert denied* 540 U.S. 811 (2003). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock, 224 F.3d at 41 (quoting Anderson, 477 U.S. at 248). Further, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"The ADA prohibits discrimination against a 'qualified individual with a disability because of the disability' in the 'terms, conditions, and privileges of employment.' " Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005) (quoting 42 U.S.C. § 12112 (a)). "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." McBride v. BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009). Under this analysis, " '[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext.' " McBride, 583 F.3d at 96 (quoting Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)); see Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000) (describing a plaintiff's initial burden as minimal), *cert denied* 530 U.S. 1261 (2000).

Plaintiff alleges two separate grounds for Defendant's alleged violation of the ADA: (1) Defendant's failure to provide a reasonable accommodation for her disability; and (2) the alleged discriminatory termination. For the reasons discussed below, Defendant's motion for summary judgment is granted with respect to both claims.

**A.     Failure to Accommodate**

Initially, to the extent that Plaintiff is asserting a cause of action for failure to accommodate separate and distinct from the alleged discriminatory termination claim, (see Am. Compl. ¶¶ 29, 34), Defendant correctly argues that such a claim is untimely. To state a viable disability discrimination claim, a plaintiff must have filed a charge of discrimination

6

with the EEOC within 300 days of the last allegedly unlawful employment practice. Harris v. City of N.Y., 186 F.3d 243, 248 n. 2 (2d Cir. 1999); Clarke v. Roslyn Union Sch. Dist., No. 11-CV-2957, 2012 WL 2916759, at *5 (E.D.N.Y. July 17, 2012). "[A] right-to-sue letter enables a private suit only if it is issued in connection with an administrative charge that is timely filed." McPherson v. N.Y. City Dep't of Ed., 457 F.3d 211, 214 (2d Cir. 2006); Tropeano v. City of N.Y., No. 06 CV 2218, 2006 WL 3337514, at *2 (E.D.N.Y. Oct. 31, 2006).

Here, Plaintiff alleges that Defendant revoked a reasonable accommodation by taking back the key that allowed her to access a side door next to the employee parking. (Am. Compl. ¶ 33; Pl's Mem of Law in Opp'n at 1-3, 10.) Plaintiff testified at her deposition, however, that this occurred "years" prior to her termination in November 2008. (Pl's Dep at 64, 68.) Accordingly, even assuming that the taking away of Plaintiff's key to the side door was the revocation of a reasonable accommodation, this claim is untimely as it occurred more than 300 days prior to her filing her claim with the NYSDHR and EEOC in January 2009. (Am. Compl. ¶ 7.) Notably, Plaintiff fails to address this argument in her memorandum in opposition.

Moreover, in her response to Defendant's Statement of Undisputed Facts, Plaintiff asserts that the parking accommodation continued after the revocation of key privileges. (Docket No. 19-1.) She testified that accessing the building through the side door was adequate "[f]or a time." (Pl's Dep at 60.) She fails, however, to specify when this accommodation was in fact revoked. Indeed, Plaintiff testified that she was unable to gain access through the side door only "[s]everal [times] over the course of the few years." (Pl's Dep at 68.) Notably, "not everything that makes an employee unhappy is an actionable

7

adverse action." Valentine v. Standard & Poor's, 50 F.Supp.2d 262, 284 (S.D.N.Y.1999) (quotation marks omitted), *aff'd* 205 F.3d 1327 (2d Cir.2000). Plaintiff testified that on the occasions she needed to walk to the front door, there was no effect on her ability to arrive on time or perform her job, and she was never reprimanded as a result of where she parked. (Pl's Dep at 73.) Accordingly, Plaintiff has failed to meet even her minimal burden of establishing that a further reasonable accommodation was necessary in order for her to perform "the essential functions of [her] job." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). Intermittent inconveniences which have no effect on the "terms, conditions, and privileges of employment" are an insufficient basis to establish a failure to accommodate claim. 42 U.S.C. 12112 (a); Capobianco, 422 F.3d at 56.

**B.    Discriminatory Termination**

To establish a prima facie case of discrimination, a plaintiff must show that (1) her employer is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of this act; (3) plaintiff could perform the essential functions of her job with or without reasonable accommodation for the disability; and (4) plaintiff suffered an adverse employment action because of the disability or perceived disability. Capobianco, 422 F.3d at 56; Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). Here, assuming arguendo that Plaintiff established such a prima facie case of discrimination,[3] a conclusion this Court does not reach, Defendant has offered admissible

---

[3] "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. [This C]ourt has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (internal quotation marks omitted).

evidence of a legitimate, non-discriminatory reason for Plaintiff's termination. See McBride, 583 F.3d at 96.

Specifically, Keller averred that Plaintiff's position was eliminated along with two other positions as part of an organizational restructuring. (Keller Aff ¶¶ 2-3.) Contrary to Plaintiff's contention that Defendant offered no reason for the restructuring or the elimination of her position in particular, (Pl's Mem of Law in Opp'n at 15-16), Keller specifically testified that the restructuring was prompted by the county's assumption of the MOMs program and the corresponding loss of funding. (Keller Dep at 10-11, 38-39; see Pl's. Counter-statement of Undisputed Facts ¶ 45 (conceded the downsizing was for the purpose of getting rid of the MOMs program).) Further, Plaintiff's duties, which were clerical in nature, were transferred to the health support specialists who also dealt directly with clients on, among other things, eligibility and nutrition education. (Keller Dep at 41-42; see Pl's Dep at 38, 107.) "This articulated explanation satisfies the defendant's minimal burden of articulating a nondiscriminatory reason for the termination." Penberg v. HealthBridge Mgmt., 823 F. Supp. 2d 166, 176 (E.D.N.Y. 2011) (economic challenges and a desire to streamline operations valid reason for termination); see DeMarco v. CooperVision, Inc., 369 Fed. Appx. 254, 255-256 (2d Cir. 2010) (corporate restructuring and cost-cutting constitute legitimate, non-discriminatory reason for termination where plaintiff's job responsibilities were either absorbed by other employees or eliminated); Olle v. Columbia Univ., 332 F. Supp. 2d 599, 616-17 (S.D.N.Y. 2004) (operational restructuring repeatedly recognized as legitimate, non-discriminatory reason for termination), *aff'd* 136 Fed. Appx. 383 (2d Cir. 2005).

"Upon the defendant's articulation of such a non-discriminatory reason for the

employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42. The burden then shifts back to the plaintiff to present not only sufficient evidence to support a rational determination by a trier of fact that the purported non-discriminatory reason articulated by the defendant is false, but also evidence upon which a trier of fact may reasonably conclude that plaintiff's assertion of intentional discrimination is true. Weinstock, 224 F.3d at 42, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Here, the stray comments that Plaintiff alleges are indicative of bias are insufficient to "carry the burden of persuasion that the proffered reason is a pretext." McBride, 583 F.3d at 96 (internal quotation marks omitted); see Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998) (stray remarks alone do not support a discrimination suit); see also Ezold v. Wolf, Block, Schorr & Solis–Cohen, 983 F.2d 509, 545 (3d Cir.1992) ("[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision"), *cert denied* 510 U.S. 826 (1993). Here, Plaintiff attributes two or three comments to Bach and Michele Valone, supervisors in her department, and argues that Keller's restructuring decision was based on these supervisors' recommendations. (Pl's Mem of Law in Opp'n at 9-10; Am. Compl. ¶¶ 21-22; Pl's Dep at 90-94.) There is no evidence in the record, however, to dispute the fact that Keller made the ultimate determination to eliminate Plaintiff's position as part of the restructuring, and that she was unaware at that time of Plaintiff's alleged disabilities. (Keller Dep at 15-16, 38, 42-43.) Accordingly, even considering these ambiguous comments as evidencing bias, this Court

finds them sufficiently attenuated from Plaintiff's termination. Kantrowitz v. Uniondale Union Free Sch. Dist., 822 F. Supp. 2d 196, 216 (E.D.N.Y. 2011) (where evaluator was not ultimate decision maker regarding abolition of plaintiff's position, remote and oblique comments are insufficient to raise inference of discrimination).

Plaintiff further argues that, based on her previous experience as a nutrition clerk, she could have been placed in either a nutrition support specialist position or trained to become of health care support specialist. (Pl's Mem of Law in Opp'n at 8-9.) She fails to address the fact that these positions did not require new hires, but were the result of modifications to existing positions; indeed, no new hires were necessary as a result of the restructuring. (Keller Dep at 48-50; Stalter Dep at 26.) Further, Keller testified, and Plaintiff does not dispute, that the nutrition support specialist position would have been a demotion. (Keller Dep at 64-65; see Wagner Affirm Ex 11 (listing grade levels associated with each relevant position).) Plaintiff also admits that she would need additional training for the position of health care support specialist. (Pl's Mem of Law in Opp'n at 9.) The Court also finds Plaintiff's assertion that Defendant posted an advertisement for her position sometime in 2010 or 2011, notably two to three years after her termination, to be too vague and conclusory to raise an inference of discrimination. (See Pl's Dep at 107-108.)

Finally, Plaintiff asserts that Defendant violated its contract with WIC by terminating her employment. (Pl's Mem of Law in Opp'n at 17.) This argument is conclusory and undeveloped. In any event, in the absence of sufficient evidence upon which a trier of fact may reasonably conclude that Plaintiff's assertion of discrimination is true, Weinstock, 224 F.3d at 42, Defendant's alleged violation of the WIC contract is irrelevant to the present claim of discrimination.

## IV. CONCLUSION

Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination, and the evidence in the record, even considered in a light most favorable to Plaintiff, fails to raise a reasonable inference of discrimination. Defendant's motion is therefore granted and the Amended Complaint is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED and the Amended Complaint is dismissed;

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: November 18, 2012
      Buffalo, New York

                                                  /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                      Chief Judge
                                        United States District Court